**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DAMIAN R. TRAPANI,

Plaintiff,

v.

1:25-CV-01479
(GTS/PJE)

ST. PETER'S HOSPITAL OF THE CITY OF ALBANY, et al.,

Defendants.

---

**APPEARANCES:**

Damian R. Trapani
9 Avenue C
Geneva, New York 14456
Plaintiff pro se

**REPORT-RECOMMENDATION & ORDER**

Plaintiff pro se Damian R. Trapani[1] purported to commence this action on October 22, 2025, with the filing of a complaint. *See* Dkt. No. 1. As plaintiff did not pay the filing fee or apply for leave to proceed in forma pauperis ("IFP"), the Court administratively closed the case. On December 1, 2026, plaintiff filed an application for leave to proceed IFP and the Court reopened the case. *See* Dkt. Nos. 4, 5. On January 5, 2026, plaintiff filed a supplemental declaration in support of his IFP application. *See* Dkt. No. 6. The undersigned has reviewed plaintiff's submissions and

[1] Plaintiff has commenced other actions in this District: (1) 1:10-CV-1353 (TJM/RFT), *Trapani v. Carney, et al.*; (2) 8:23-CV-01433 (LEK/DJS), *Trapani v. Sypniewski, et al.*; (3) 9:18-CV-805 (CFH), *Trapani v. Dagostino, et al.*; (4) 9:21-CV-681 (LEK/ML), *Trapani v. Annucci, et al.*; 9:14-CV-556 (TJM/TWD), Trapani v. Bonafede, et al.; (5) 9:14-CV-683 (GTS/CFH), T*rapani v. Cuomo, et al.*; (6) 1:25-CV-1846 (LEK/DJS), *Trapani v. Spniewski, et al.*

concludes he is financially qualified for leave to proceed IFP. *See* Dkt. Nos. 4, 6. Accordingly, plaintiff's IFP application is granted.[2]

## II. **Legal Standards**

28 U.S.C. § 1915 provides that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action." *Praileau v. Fischer*, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks and citation omitted). As the Second Circuit stated,

> our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law. . . .

*Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks, citations, and footnote omitted)*; see also Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008). Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants

[2] Plaintiff is advised that IFP status does not apply to any other costs or expenses associated with this action, including, but not limited to, copying fees.

with notice of the claims against them and the grounds upon which these claims are based. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Further, "pro se pleadings still must comply with . . . the Federal Rules of Civil Procedure."[3] *Kastner v. Tri State Eye*, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994));[4] *see also* FED. R. CIV. P. 8(a)(2) (providing that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief," "a short and plain statement of the grounds for the court's jurisdiction . . . and . . . a demand for the relief sought . . . ."). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* (citations omitted).

---

[3] Hereafter, "Fed. R. Civ. P."

[4] All unpublished cases cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff. *See Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Under Rule 8, a complaint shall contain "(1) a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). In deciding whether a complaint states a claim, a "court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Dallio v. Hebert*, 678 F. Supp. 2d 35, 54 (N.D.N.Y. 2009) (quoting *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)). However, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Burrell v. DOCCS*, 655 F. Supp. 3d 112, 121 (N.D.N.Y. 2023) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)); *see also Spinner Consulting LLC v. Stone Point Cap. LLC*, 623 B.R. 671, 675 (D. Conn. 2020) (noting that while "detailed allegations are not required . . . , conclusory assertions are insufficient), *aff'd*, 843 F. App'x 411 (2d Cir. 2021). A complaint that fails to comply with these pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense[,] and provides no meaningful basis for the Court to assess the sufficiency of their claims." *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

## III. **Complaint**

Plaintiff provides that on July 30, 2024, he was transported to St. Peter's Hospital Emergency Room in Albany, New York, "after ingesting crack cocaine." Compl. at 3. Plaintiff was "lucid" and "request[ed] activated charcoal and close observation." *Id.* Plaintiff contends that hospital staff "negligently and maliciously denied or ignored" plaintiff's request, informing him "that the hospital no longer administered activated charcoal for narcotics ingestion." *Id.* Plaintiff was "placed in a crowded emergency department waiting area, publicly exposing his sensitive medical condition to other patients." *Id.* Plaintiff contended that he eventually "began to experience drug-induced delirium, heart palpitations, and sharp chest pain" for which he "repeatedly sought help from nurses and security, but was met with open hostility and rudeness." *Id.* At some point, plaintiff "fell from his wheelchair and later from a bed in a hallway, screaming that he was having a heart attack." *Id.* "Despite clear emergency, hospital staff continued to delay treatment, prioritizing unnecessary X-rays over life saving intervention." *Id.*

"[A]n unnamed female security guard, Defendant Jane Doe, who was formerly or is currently a Correction Officer with the Schenectady County Sheriff Department," approached plaintiff in the hallway, stating "with open hostility," "you think we don't know who you are. We remember you from jail." Compl. at 3. Plaintiff contends that Jane Doe's statement "was a direct reference" to plaintiff's twenty-five year history "of challenging social injustices imposed against prisoners and detainees" as a "prolific litigant and advocate, fighting for law library materials, recreational reading materials, and proper living conditions at the Schenectady County Correctional Facility," resulting in three successful civil lawsuits against Schenectady County and the State of New

York, winning two appeals, and “circumvent[ing] convictions on several felony cases, including felony assault charges brought against him by correction staff employed by the Schenectady County Sherriff Department at the Schenectady County Correctional facility.” *Id.* at 3-4. Plaintiff contends that Jane Doe’s statement was “a deliberate, conspiratorial act of retaliation for his protected First Amendment rights.” *Id.* at 4.

While plaintiff was “in a state of drug-induced delirium,” a nurse physically assaulted him. Compl. at 4. “When [plaintiff] regained consciousness he was being held down by multiple nurses and security personnel, who surrounded him with clenched fists and open hostility.” *Id.* “Defendants then forcibly injected Plaintiff with a sedative against his will, without informed consent, while he was restrained.” *Id.* Plaintiff contends that “Defendant Police Officers, were present and actively participating in the physical restraint.” *Id.* The police officers “conspired with the private defendants to restrain Plaintiff and deny his requests to press charges against the hospital staff.” *Id.*

After receiving the sedative, “Plaintiff was taken to an empty room, handcuffed, and strapped to a bed, where a doctor eventually administered activated charcoal. The doctor’s reluctance suggested he was acting under duress and not out of professional care.” Compl. at 4.

Plaintiff provides that he wishes to bring claims pursuant to (1) 42 U.S.C. § 1983 for alleged violations of his First, Fourth, and Fourteenth Amendment rights; (2) the Emergency Medical Treatment and Active Labor Act for failure to provide “appropriate medical screening and stabilizing treatment” resulting in “severe personal injuries, and (3) Title III of the Americans with Disabilities Act for discriminating against him for his

disability of substance use disorder by "deny[ing] him full and equal enjoyment of the goods, services, facilities, and privileges of the hospital on the basis of his perceived or actual disability" insofar as "[t]he denial of activated charcoal, the hostile and rude treatment by staff, and the subsequent unlawful restraint and sedation." Compl. at 7. Plaintiff argues that the Police defendants "subjected Plaintiff to an unreasonable seizure and the use of excessive force in violation of the Fourth and Fourteenth Amendments." *Id.* at 4. He contends that the police defendants "actively conspired" with the St. Peter's defendants "to restrain Plaintiff and deny his rights to press charge against the hospital staff." *Id.*

He also seeks to bring the following state law claims pursuant to this Court's supplemental jurisdiction: (1) Assault and Battery, (2) Intentional Infliction of Emotional Distress, (3) Medical Malpractice & Negligence, (4) Invasion of Privacy in violation of New York State Mental Hygiene Law 33.13, (5) "Negligent Hiring, Retention, and Supervision," and (6) "Respondeat Superior." Compl. at 8. Within his complaint, plaintiff also requests this Court issue sanctions against the St. Peter's defendants for their alleged failure to "preserve and retain requested relevant hospital video and surveillance footage." *Id.*

Plaintiff[5] contends that St. Peter's Hospital; St. Peter's Health Partners; Jane/John Does #1-15; Sean Keane, Manager of Security at St. Peter's Hospital; Dennise Allen, Security Guard at St. Peter's Hospital; Erica Brant, Security Guard at St. Peter's Hospital (collectively, St. Peter's defendants, where appropriate) conspired with

[5] Plaintiff contends that he brings his complaint "by and through his counsel"; however, plaintiff has appeared in this action pro se.

the City of Albany, City of Albany Police Department, Doe Police Commander, City of Albany Police Department; Doe City of Albany Police Sergeant; and Does #3-6,[6] City of Albany Police Officers to deny him care in retaliation for plaintiff's "extensive history as a pro-se litigant and advocate for prisoner and detainee rights." Compl. at 1-2.

Plaintiff contends that the municipal defendants are liable "because the unconstitutional acts of their officers were committed pursuant to "a custom or policy of the municipality" which "includes, but is not limited to, a failure to properly train and supervise police officers in their interactions with private hospitals and individuals experiencing medical emergencies, as well as a policy of deliberate indifference to the rights of detainees and individuals known to challenge the government." Compl. at 5.

Plaintiff seeks $1,000,000 in compensatory damages; punitive damages of $4,000,000 "against all Defendants for their malicious, willful, and wanton conduct[,]" unspecified "Damages for the deprivation of his civil rights," "Reimbursement for all significant medical expenses and other financial losses," and costs and fees. Compl. at 9.

## IV. **Analysis**

### A. **1983 Claims pursuant to *Monell***

#### 1. **State Actor: Conspiracy or Joint Action**

As plaintiff implicitly acknowledges, the St. Peter's defendants are not state actors, however, he contends they "engag[ed] in a willful and concerted joint action, with the City of Albany Police Department to unlawfully restrain, sedate, and imprison Plaintiff[,]" officers "active[ly] participat[ed] in the physical restraint" and "actively

[6] Plaintiff refers to the unidentified police defendants as "Michael Moes # 1-6. For ease of reference, the undersigned refers to these parties as Does.

conspired" with the St. Peter's defendants to restrain plaintiff and prevent him from filing charges against the St. Peter's defendants, which was "integral to the deprivation of Plaintiff's constitutional rights." Compl. at 4, 5. Plaintiff interchangeably uses the terms "joint action" and "conspiracy" throughout his complaint; however, these two claims are not identical. Out of special solicitude to the pro se plaintiff, the undersigned will assess whether he has sufficiently alleged either conspiracy or joint action.

> To plead joint action under Section 1983, a plaintiff must "allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Betts*, 751 F.3d at 84 (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)). "Put differently, a private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.'" *Ibid.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).
>
> To allege a Section 1983 conspiracy against a private party, a plaintiff "must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). Under both theories of liability, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Id.* at 324-25; *see Rice v. City of New York*, 275 F. Supp. 3d 395, 403-06 (E.D.N.Y. 2017).

*Sadigh v. Quyyum*, No. 23-CV-2937 (RPK) (RML), 2025 WL 745993, at *5 (E.D.N.Y. Mar. 7, 2025) (spacing added). Although there can be no conspiracy claim if there is no demonstration of a constitutional violation, the undersigned addresses this claim first because if plaintiff has not demonstrated either, none of his section 1983 claims can proceed.

It is well settled that "[c]onclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983." *Velleca v. Pangburn*, No. 9:20-CV-0887 (BKS/DJS), 2022 WL 2392543, at *5

(N.D.N.Y. June 2, 2022) (citing *O'Neil v. Bebee,* No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948, at *9 (N.D.N.Y. Feb. 10, 2010)) (internal quotations omitted), r*eport and recommendation adopted*, 2022 WL 2390243 (N.D.N.Y. July 1, 2022); *see also, e.g.*, *Hawthorne v. City of Albany*, No. 1:17-CV-0716 (GTS/TWD), 2017 WL 3822112, at *7 (N.D.N.Y. July 25, 2017) ("Wholly conclusory claims of conspiracy are properly dismissed sua sponte on initial review.") (citing *Johnson v. Goord*, 12 F. App'x. 22, 23 (2d Cir. 2000) (summary order) (additional citation omitted)), *report and recommendation adopted sub nom. Hawthorne v. Ruecker*, 2017 WL 4351520 (N.D.N.Y. Oct. 2, 2017). Here, plaintiff did not show meeting of minds to commit an unconstitutional act as needed in order to plead a claim for conspiracy under section 1983. *See Ciambriello*, 292 F.3d at 325 (2d Cir. 2002) (dismissing a § 1983 conspiracy claim where the complaint lacked specific factual allegations demonstrating an agreement between defendants); *see also Romer v. Morgenthau*, 119 F. Supp. 2d 346, 364 (S.D.N.Y. 2000) (dismissing conspiracy claim as "too general and conclusory to sufficiently plead the meeting of the minds requirement.").

> Thus, a complaint must allege facts demonstrating that the private party and the state actor "share[d] some common goal to violate the plaintiff's rights" and "that the private entity acted in concert with the state actor to commit an unconstitutional act." *Betts*, 751 F.3d at 84-85 (quoting *Spear*, 954 F.2d at 68) (internal quotations omitted).

*Arbeeny v. Cuomo*, No. 22-CV-02336 (LDH) (LB), 2025 WL 71729, at *3 (E.D.N.Y. Jan. 10, 2025), *aff'd*, No. 24-2856, 2025 WL 3079217 (2d Cir. Nov. 4, 2025), *cert. denied sub nom. Arbeeny v. Cuomo*, 224 L. Ed. 2d 499 (Apr. 20, 2026).

2. **First Amendment Retaliation**

The undersigned next assesses whether plaintiff has sufficiently alleged joint action and First Amendment retaliation. Plaintiff contends that, due to his history of filing lawsuits and speaking out against conditions at the Schenectady County Correctional Facility, he was restrained, administered a sedative against his will, and beaten by a nurse. *See* Compl. at 27. He contends that police officers were present and actively participated in restraining him.

However, plaintiff fails to show that anyone other than the Jane Doe security guard was aware of plaintiff's litigation history. Nothing suggests that the Doe Nurse or officers who assisted in restraining him were aware of his history of protected speech relating to the Schenectady County Correctional Facility or that they restrained, beat him, or issued a nonconsensual sedative because of the protected speech.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). Accordingly, plaintiff has failed to demonstrate that the security officer acted jointly with state actors to retaliate against plaintiff in violation of his First Amendment rights and this claim must fail. Out of special solicitude to plaintiff pro se, it is recommended that this claim be dismissed without prejudice and with leave to amend.

3. **Fourteenth Amendment: Equal Protection**

Plaintiff contends that defendants violated the Equal Protection Clause of the Fourteenth Amendment by enforcing a “first come, first served” “policy of serving patients in order of arrival. He contends that they “appl[ied] a de facto first-come-first-served policy in a discriminatory manner.” Compl. at 5-6. He contends “[t]he evidence suggests that this selective enforcement was not based on clinical triage but was an intentional, malicious delay of care, initiated after Defendants recognized Plaintiff as a controversial and prolific litigator, thus constituting a breach of the fundamental trust inherent in emergency medical services.” *Id.* at 6. Plaintiff contends that the hospital defendants delayed him care due to his First Amendment exercise which “reflects a deliberate policy or custom to treat individuals perceived as challenging to the system, or those with perceived stigmatized conditions like substance use disorder, with marked hostility and a substandard level of care not applied to the general public.” *Id.* Plaintiff contends that this conduct amounts to state action because the City of Albany police officers participated in restraining plaintiff and refused to allow plaintiff to press criminal charges against the “hospital staff.” “This concerted action transomed the hospital’s internal, discriminatory policy into a state-sanctioned deprivation of civil rights, violating the Equal Protection Clause of the Fourteenth Amendment by treating Plaintiff as a ‘class of one’ who was singled out for punitive, adverse treatment absent any rational basis for doing so, other than to retaliate for his past advocacy.” Id. at 6.

Plaintiff contends that the hospital’s treatment of him, “contrasted with the immediate or prioritized care typically afforded to other patients presenting with life-threatening symptoms” suggests that the hospital applied its policy of the order in which to treat patients in a discriminatory manner. Yet, this generalized allegation does not

explain how he was treated differently from similarly-situated patients, nor does plaintiff allege that he was treated differently based on a protected characteristic.

Insofar as plaintiff invokes a class of one theory of discrimination, plaintiff does not demonstrate state action. Even if he alleges that officers participated in restraining him and declined to allow plaintiff to bring criminal charges against hospital staff, he does not show how participating in restraining plaintiff is part of a joint action to enforce a policy of delaying treatment to him. Even if the officers engaged in joint action to restrain plaintiff and to prevent him from bringing charges against the hospital workers who restrained him, there is no connection to the policy he alleges – to decline to administer him treatment as quickly as his medical condition necessitated because of his status either as a litigator or person with substance use disorder. As plaintiff has not demonstrated state action, his Fourteenth Amendment claim must fail.

4. **Fourth Amendment: Unreasonable Seizure and Excessive Force**

a. **Restraint**

Plaintiff contends that he was unreasonably seized and subjected to excessive force,, in violation of the Fourth Amendment, insofar as he was restrained and administered a sedative without consent. *See* Compl. at 4-5.The Supreme Court of the United States has made clear that a seizure occurs when "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Although plaintiff has arguably sufficiently alleged joint action between the police officers and hospital staff, he has not provided sufficient facts surrounding defendants' restraint to allow the undersigned to assess whether the force was excessive or objectively unreasonable. As noted, plaintiff alleges

that he was experiencing drug-induced delirium. Plaintiff has not provided facts for the undersigned to address whether he was complying, acting aggressively, threatening, or if he was submissive and calm. Thus, it is recommended that his Fourth Amendment claim, as it relates to his being restrained, be dismissed without prejudice and with leave to amend.

b **Beating**

Plaintiff contends that a Jane Doe "physically assaulted" him. Compl. at 4 ¶ 27. However, plaintiff does not allege joint action here. Although plaintiff contends that police refused to allow plaintiff to press charges, he fails to connect the refusal with any joint action or conspiracy to deprive plaintiff of his constitutional rights. *See id.* As noted, mere conclusory allegations of a conspiracy or concerted action with a government officer, as plaintiff has pled here, do not suffice. Here, it appears he seeks this Court to infer that, because officers did not allow plaintiff to press charges, it must be presumed that they conspired with the Jane Doe nurse who assaulted him. Arguably, it might support a claim for failure to intervene, but plaintiff fails to provide how it supports a claim that the municipal defendants conspired to violate his Fourth Amendment rights.

Accordingly, insofar as he contends that he was physically assaulted in violation of the Fourth Amendment and that there existed joint action or conspiracy with state actors, such claim fails. Accordingly, it is recommended that this claim be dismissed. Out of special solicitude to plaintiff pro se, it is recommended he be afforded leave to amend.

5. **Defendants Named Only in Caption**

Plaintiff also fails to demonstrate personal involvement of the Doe City of Albany Police Commander; Doe City of Albany Police Department Police Sergeant; Manager of Security, Sean Keane; or Security Guards Erica Brandt and Dennise Allen. He names these defendants in the caption but does not identify them anywhere else in the complaint. Similarly, he names a variety of Doe individuals, yet, other than identifying the Doe security officer who made a comment about his former incarceration and the Doe nurse who assaulted him,[7] plaintiff does not explain how the other Doe defendants were involved in the alleged violation of his constitutional rights. The undersigned can surmise that the Doe Officers 3-6 were the ones allegedly involved in restraining him, but it is not possible to guess as to the John/Jane Does 1-15.

Claims "cannot be maintained against parties who are named only in the caption and not discussed in the complaint." *Cipriani v. Buffardi*, No. 9:06-CV-0889 (LEK/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (citation omitted) ("A complaint cannot be maintained against a defendant who is listed in the caption, but against whom no facts are alleged in the body of the complaint."). Accordingly, it is recommended that any claims against Brandt, Allen, Keane, Doe City of Albany Police Commander, Doe City of Albany Police Sergeant, and John/Jane Does ##1-15 be dismissed without prejudice and with opportunity to amend.

### 6. ***Monell***

Even if plaintiff had sufficiently established joint action or conspiracy, he may only proceed against the municipality pursuant to *Monell*. There are several deficiencies

[7] Plaintiff does not assign a number to these Doe defendants. It is recommended, upon amendment, plaintiff refer to security officer who spoke with him as Doe Officer # __ and the nurse who allegedly assaulted him as Doe Nurse #___ or a similar kind of identification.

with the complaint in this regard. First, the police department is a municipal entity and is not legally distinct from the municipality. *See Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing Section 1983 claim brought against the police department because it did not have a legal identity distinct from the municipality). Thus, the City of Albany Police Department is not the proper defendant; rather, the City of Albany is. Accordingly, it is recommended that the City of Albany Police Department be dismissed from this action.

Similarly, insofar as plaintiff names the Doe City of Albany Police Commissioner, to the extent he names the officer in his or her official capacity, "official capacity claims against these defendants are, in effect, claims against the municipality that employs them." *Sangaré v. City of Albany*, No. 1:24-CV-555 (DNH/PJE), 2026 WL 1964895, at *13 (N.D.N.Y. June 8, 2026), *report and recommendation adopted*, No. 1:24-CV-555 (DNH/PJE), 2026 WL 1963720 (N.D.N.Y. July 1, 2026). "Where, as here, the plaintiff has also named the municipality as a defendant, courts generally dismiss official-capacity claims as redundant or duplicative." *Id.* (citing, *inter alia*, *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 498-99 (N.D.N.Y. 2017)). Accordingly, to the extent plaintiff seeks to sue Doe Police Commander, City of Albany Police Department and Doe Police Sergeant, City of Albany Police Department in their official capacities, such claims be dismissed as duplicative of any claims against the municipality. *See id.*

Because the police officer defendants are municipal agents, not state actors, plaintiff must demonstrate that his constitutional rights were violated pursuant to a municipal policy, custom, persistent or widespread practice, or failure to train or supervise. "The elements of a *Monell* claim are (1) a municipal policy or custom that

(2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020); *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020). *Monell* "extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). "'[A] successful *Monell* claim based on a failure to train theory must show that 'the need to act [was] so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights.'" *Tirado v. City of New York*, 19-CV-10377 (LAK)(SN), 2021 WL 11646299, at *11 (S.D.N.Y. Jan. 25, 2021 (quoting *Reynolds v. Giuliani*, 506 50 F.3d 183, 192 (2d Cir. 2007)). However, "conclusory allegations that a municipality failed to train and supervise its employees are insufficient to state a *Monell* claim absent supporting factual allegations." *Hodge v. City of Mount Vernon,* No. 25-cv-2736, 2026 WL 637092, at *10 (S.D.N.Y. Mar. 6, 2026).

Plaintiff alleges that the City of Albany Police Department committed various violations of his constitutional rights "pursuant to a policy or custom of the municipality" and "said custom or policy includes, but is not limited to" a failure to properly train or supervise police officers in their interactions with private hospitals and individuals experiencing medical emergencies, as well as a policy of deliberate indifference to the rights of detainees and individuals known to challenge the government." Compl. at 4-5. Plaintiff also contends that the municipality had a "policy of deliberate indifference to the rights of detainees and individuals known to challenge the government." *Id.* at 5. He

further alleges a failure to train or supervise officers that led to the violation of his constitutional rights. *See id.*

As to plaintiff's failure to train or supervise argument, "mere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Tieman v. City of Newburgh*, No. 1:13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015); *see, e.g.*, *Wilson v. Cnty. of Onondaga*, No. 5:20-CV-1489 (DNH/TWD), 2022 WL 3141764, at *6 (N.D.N.Y. Apr. 21, 2022), *report and recommendation adopted*, 2022 WL 2965584 (N.D.N.Y. July 27, 2022). "The municipality may only be liable under the failure to train theory 'when [municipal] policymakers are on actual or constructive notice that a particular omission in their training program causes [municipal] employees to violate citizens' constitutional rights . . . [but] the policymakers choose to retain that program.'" *Forrest v. Cnty. of Greene*, 676 F. Supp. 3d 69, 77 (N.D.N.Y. 2023) (quoting *Buari v. City of N.Y.*, 530 F. Supp. 3d356, 399 (S.D.N.Y. 2021) (additional citation omitted)). "While there is no bright-line test for how many civil rights complaints must occur to adequately put a municipality on requisite notice, recurring complaints can suffice." *Id.* (citing *Buari*, 530 F. Supp. 3d at 399). Plaintiff does not sufficiently allege a practice "so consistent and wide spread that, although not expressly authorized, constitutes a custom or usage of which supervising policy-maker must have been aware." *Taylor v. Henson*, No. 25-CV-4867 (JGLC), 2026 WL 915455, at *4 (S.D.N.Y. Apr. 3, 2026) (quoting *Brandon v. City of New York,* 705 F. Supp. 2d 161, 276-77 (S.D.N.Y. 2010)).

Here, plaintiff has failed to allege that Doe Police Commissioner or Doe Police Sergeant were personally involved in the alleged constitutional violations or that they are policymakers. However, even if he had alleged they are policymakers, a policymaker is not "deliberately indifferent just because a few subordinates caused a particular kind of constitutional harm." *Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 730 (N.D.N.Y. 2020). "Rather, deliberate indifference on a failure to supervise or a failure to discipline claim requires a consistent failure to meaningfully investigate complaints or a consistent failure to discipline those involved in actual constitutional violations." *Id.* Plaintiff has not made such claims. Accordingly, it is recommended that his claim that the municipal defendants violated his constitutional rights pursuant to a failure to train or supervise also be dismissed for failure to properly plead such claim under *Monell*.

Next, plaintiff's claim that the municipality has a policy of "deliberate indifference to the rights of detainees[8] and individuals known to challenge the government" is too conclusory, even considering his pro se status and the early stage of this litigation. Compl. at 5.

> To properly plead a de facto policy or custom through a widespread practice, a plaintiff must "show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions" based on governmental reports documenting constitutional deficiency that are "sufficiently connected to the specific facts of the case" or complaints in other cases that contain similar allegations that involve factually similar misconduct, contemporaneous with the misconduct at issue, and result in an adjudication of liability. *Buari v. City of New York*, 530 F. Supp. 3d 356, 398-99 (S.D.N.Y. 2021).
>
> It is not sufficient to merely plead that the isolated incidents of the present case imply the existence of a de facto policy. *See Bird v. County of*

[8] Even if the municipality had such a policy, the undersigned fails to see its relevance because plaintiff was not a detainee at the time relevant to this complaint.

> *Westchester*, No. 20-CV-10076, 2022 WL 2263794, at *11 (S.D.N.Y. June 23, 2022) *77 ("'[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'") (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)).

*Forrest v. Cnty. of Greene*, 676 F. Supp. 3d 69, 76-77 (N.D.N.Y. 2023) (spacing added). *City of Oklahoma City v. Tuttle,* 471 U.S.808 824, n.8 (1985) ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue.") (emphasis in original)); *see also Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity."). Indeed, "conclusory allegations which merely recite the elements for stating a *Monell* claim are insufficient to state a claim for municipal liability[.]" *Blount v. Cnty. of Onondaga*, No. 5:20-CV-0937 (GTS/TWD), 2021 WL 3863386, at *5 (N.D.N.Y. May 18, 2021) (citing *Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 277 (W.D.N.Y. 2014)) (additional citation omitted)), *report and recommendation adopted*, 2021 WL 3861045 (N.D.N.Y. Aug. 30, 2021).

Plaintiff appears to seek to hold the Police Commander and Sergeant liable for the alleged acts of the police officers due to their supervisory positions. Yet, plaintiff has not alleged the City of Albany Police Commander's or Police Sergeant's involvement in any of the conduct alleged therein nor has he alleged that they are policymakers who had final decision-making authority with respect to the issues in question. *See, e.g.*, *Rissetto v. County of Clinton*, No. 15-CV-720, 2016 WL 4530473,

at *27 (N.D.N.Y. Aug. 29, 2016) (dismissing a claim against the sheriff because complaint did not assert that he "acted as a policymaker for the [relevant] purposes"). "When alleging policymakers caused the violation, 'the critical inquiry is not whether an official generally has final policymaking authority; rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit.'" *Rinaldi v. Sylvester*, No. 24-CV-272 (KMK), 2025 WL 2682691, at *21 (S.D.N.Y. Sept. 19, 2025) (quoting *Taranto v. Putnam County*, No. 21-CV-2455, 2023 WL 6318280, at *21 (S.D.N.Y. Sept. 28, 2023)).

Accordingly, it is recommended that all claims against the Doe City of Albany Police Commander and Police Sergeant in their individual capacities be dismissed without prejudice and leave to amend.

### B. **Americans with Disabilities Act**

Plaintiff appears to seek to bring a Title III ADA claims against the St. Peter's defendants for disability discrimination.[9] *See* Compl. Plaintiff contends that he was denied medical care because of his disability of substance use disorder. He contends that he was denied being administered activated charcoal, was made to wait to receive medical care despite experiencing a medical emergency and was met with rudeness and hostility from hospital staff.

> Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Hospitals are considered "public accommodations" for the purposes of the ADA. 42 U.S.C. § 12181(7)(F) (defining "public

[9] Plaintiff does not specify whether this claim is sought to be brought only against the St. Peter's defendants; however, even if plaintiff sought to raise these claims against the Police defendants, such claim would fail.

> accommodation" to include "a ... hospital"). However, Plaintiff seeks only monetary damages, and the only available remedy under Title III of the ADA is injunctive relief. 42 U.S.C. § 12188(a)(1).

*Vale v. Northwell Health*, No. 17-CV-7111 (PKC)(LB), 2018 WL 1115345, at *2 (E.D.N.Y. Feb. 26, 2018). Here, even assuming for purposes of this review that plaintiff is a qualified individual under the ADA, as plaintiff has sought only monetary relief in connection with this claim, his claim must fail. *See* Compl. at 9-10; *Frazier v. South Shore Univ. Hosp., et al.*, No. 26-CV-4450 (AMD) (LGD), 2026 WL 2333673, at *3 (E.D.N.Y. Aug. 12, 2026) (dismissing Title III ADA claim which sought only monetary relief).

C. **Emergency Medical Treatment and Active Labor Act ("EMTALA")**

Plaintiff provides that St. Peter's Hospital, which he contends is a "participating hospital under Medicare," violated the EMTALA by failing to provide "appropriate medical screening and stabilizing treatment" to plaintiff presenting with an "'emergency medical condition' (crack cocaine ingestion).'" Compl. at 7. Plaintiff contends that the violation "was compounded by their conspiratorial conduct, which constituted a deliberate denial of care to a person in dire need." *Id.* Plaintiff, elsewhere in the complaint, contends that St. Peter's uses a first-come, first-served approach in the hospital, referring to prioritizing x-rays, suggesting that the hospital was treating less-urgent, but earlier-arrived patients over him. *See id.* at 3.

"EMTALA's requirement that individuals seeking emergency care receive an 'appropriate medical screening examination' obligates hospitals to 'apply uniform screening procedures to all individuals coming to the emergency room.'" *Jones v. Beth Israel Hosp.*, No. 1:17-CV-3445-GHW, 2018 WL 1779344, at *7 (S.D.N.Y. Apr. 12,

2018) (first quoting *Matter of Baby K*, 16 F.3d 590, 595 (4th Cir.), *cert. denied*, 513 U.S. 825 (1994), then citing *Baber*, 977 F.2d at 879; next citing *Holcomb v. Monahan*, 30 F.3d 116, 117 (11th Cir. 1994) (holding that EMTALA's screening provision "requires a hospital to provide indigent patients with a medical screening similar to one which they would provide any other patient")). "Courts have interpreted 'appropriate medical screening' as a requirement that hospitals must "provide uniform or even-handed screening examinations for emergency conditions, consistent with their own policies and based on the hospital's capabilities and the medical circumstances and symptoms presented." *Lawrence v. Charlotte Hungerford Hospital*, No. 3:25-CV-01022 (SVN), 2026 WL 2140448, at *5 (D. Conn. July 23, 2026) (quoting *Macamaux v. Day Kimball Hosp.*, No. 3:09-CV-164 (JCH), 2011 WL 4352007, at *3 (D. Conn. Sept. 16, 2011)). The statute defines "emergency medical condition" as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in ... placing the health of the individual . . . in serious jeopardy; serious impairment to bodily functions; or . . . [s]erious dysfunction of any bodily organ or part." 42 U.S.C. § 1395dd(e)(1).

> The EMTALA requires "such treatment as may be required to stabilize the medical condition," 42 U.S.C. § 1395dd(b)(1)(A), and forbids the patient's release unless his condition has "been stabilized," *id.* § 1395dd(c)(1). The statute defines "emergency medical condition" as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in . . . [inter alia] placing the health of the individual . . . in serious jeopardy[.]" *Id.* § 1395dd(e)(1)(A)(i).

*Jones*, 2018 WL 1779344, at *8. "A patient with an emergency medical condition is 'stabilized' when 'no material deterioration of the condition is likely, within reasonable

medical probability, to result from or occur during' the patient's release from the hospital." *Id.* (quoting 42 U.S.C. § 1395dd(e)(3)(B)).

Plaintiff provides that when he arrived at St. Peter's Hospital, he requested activated charcoal and was told that the hospital did not issue charcoal anymore for narcotics use. *See* Compl. at 3. He also contends that while he was waiting for care, he fell out of his hospital bed and a wheelchair and screamed that he was having a heart attack. *See id.* He provides that he was eventually issued activated charcoal before he was released. Thus, he fails to state a claim for failure to stabilize. *See id.* at 4.

Addressing his allegations of a failure to properly screen, he contends that he suffered serious injuries because of the alleged failure to properly screen under the EMTALA. Although he refers to waiting in the waiting room, he also provides that he initially asked for activated charcoal and was told the hospital does not provide it, was placed on a hospital bed, all suggesting that he was subject to triage and eventually brought into the emergency room while awaiting treatment. At some point, a screening must have occurred because he was provided with medical treatment. However, some courts have held that an unjustified delay in attending to a patient can amount to effective denial of a screening examination. *See, e.g.*, *Byrne v. Cleveland Clinic*, 684 F.Supp. 2d 641 (E.D. Pa. 2010).

Further, plaintiff has not contended that the alleged delay in screening was due to his inability to pay. "An appropriate screening is properly determined not by reference to particular outcome but instead by reference to a hospital's standard screening procedures and it is for a plaintiff to show that, in screening him/her the

hospital failed to follow the screening policy or standard of care which it regularly follows for other patients presenting substantially similar conditions." *Rosado-Gonzalez v. Alejandro Otero Lopez Hosp.*, 836 F. Supp. 2d 48, 56 (D.P.R. 2011).

Plaintiff suggests that he was not screened because the medical providers at St. Peter's Hospital were "prioritizing unnecessary x-rays over life-saving intervention[,]" pursuing a first-come, first served approach to seeing patients. *See* Compl. at 3. Even assuming this is true, he does not set forth any allegation that St. Peter's Hospital deviated from its own screening procedures, as the EMTALA requires. *See* Compl. at 6-7; *Brenord v. Cath. Med. Ctr. of Brooklyn & Queens, Inc.*, 133 F. Supp. 2d 179, 190 (E.D.N.Y. 2001) ("Even assuming that screening procedures at St. Mary's Hospital should have been in accordance with these state law provisions, the fact that they might not have been does not demonstrate that St. Mary's deviated from its own screening procedures, a showing which is essential to an EMTALA claim. Also, even if plaintiffs could demonstrate that St. Mary's Hospital did have written policies that complied with these state laws, it is not at all clear that such policies would constitute part of the hospital's 'standard screening procedures' if they were uniformly ignored by hospital staff."). Indeed, "'[t]he appropriateness of the screening examination is determined by reference to how the hospital treats other patients who are perceived to have the same medical condition . . . . EMTALA is implicated only when individuals who are perceived to have the same medical condition receive disparate treatment.'" *Brenord v. Cath. Med. Ctr. of Brooklyn & Queens, Inc.*, 133 F. Supp. 2d 179, 189 (E.D.N.Y. 2001) (quoting Fisher, 989 F.Supp. at 449)

Although he references experiencing drug-induced psychosis, which he appears to attribute to the failure to issue activated charcoal at an earlier time, and contends that he was experiencing palpitations and screamed to nurses that he was having a heart attack, he does not contend that he actually experienced a heart attack. Plaintiff contends that he suffered serious injury from the delay in receiving medical care but does not define his injury. *See generally* Compl.

To the extent plaintiff names any defendant beyond St. Peter's Hospital[10] in his EMTALA claim, such claims must be dismissed as the "'if any individual' language has been interpreted through a plain reading of the statute to extend protection to all individuals who present at participating hospitals." *Ballachino v. Anders*, 811 F. Supp. 121, 123 (W.D.N.Y. 1993) (first citing *Gatewood v. Washington Healthcare Corp.*, 933 F.2d 1037, 1040 (D.C.Cir.1991)); then citing *Cleland v. Bronson Health Care Grp., Inc.*, 917 F.2d 266, 269-70 (6th Cir.1990) (additional citation omitted). "Equally persuasive is the opinion that the Act's enforcement provision, codified at § 1395dd(d)(2)(A), is explicitly limited to actions against the participating hospital so that there is no private right of action against individual physicians under EMTALA." *Id.* (citing *Gatewood*, 933 F.2d at 1040).

Accordingly, it is recommended that plaintiff's EMTALA claim against St. Peter's Hospital be dismissed for failure to state a claim. Out of special solicitude to the pro se plaintiff, it is recommended he be afforded leave to amend as against St. Peter's Hospital. To the extent plaintiff may have intended to bring this claim against any other defendant, such claim be dismissed without opportunity to amend.

---

[10] *See* Compl. at ¶¶ 49-50, referring to "Defendants" collectively.

D. **State Law Claims**

District courts have supplemental jurisdiction over all state law claims that are so related to federal claims over which they exercise original jurisdiction that they form part of the same case or controversy under Article III of the Constitution. *See* 28 U.S.C. § 1367(a) (2000). Although the undersigned does not recommend that any federal claim proceed as pled, because the undersigned recommends allowing plaintiff to amend, the undersigned reaches review of plaintiff's state claims with judicial efficiency in mind.[11]

1. **Municipal Defendants**

Plaintiff does not specify against whom he seeks to bring most of his state law claims, largely referring to defendants collectively. He seeks to bring claims for negligence and medical malpractice, intentional infliction of emotional distress, assault and battery, Mental Hygiene Law § 33.13, negligent hiring and retention, and "respondeat superior." Compl. at 8.

The Court has the discretion to address plaintiff's state law claims through its supplemental jurisdiction. To the extent plaintiff brings these claims against the County defendants, plaintiff has failed to demonstrate compliance with filing a notice of claim. Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality and any of its officers, agents, or employees. *See* N.Y. Gen. Mun. Law §§ 50-e(1), 50-i(1); *C.S.A. Contracting Corp. v. New York City Sch. Constr. Auth.*, 5 N.Y.3d 189, 192 (2005); *see also Fincher v. Cnty. of Westchester*, 979 F. Supp. 989,

---

[11] The undersigned would only recommend exercising supplemental jurisdiction over the state law claims if a valid federal claim is permitted to proceed. *See generally See Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims"). The undersigned reviews plaintiff's state law claims for thoroughness.

1002 (S.D.N.Y. 1997). "A notice of claim must be filed within ninety days after the claim arises." *Acevedo v. City of New York*, No. 1:24-CV-558-GHW, 2026 WL 1661344, at *12 (S.D.N.Y. June 8, 2026) (quoting *Rose v. Cnty. of Nassau*, 904 F. Supp. 2d 244, 248 (E.D.N.Y. 2012). "'In addition, the plaintiff must plead in his complaint that: (1) he has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or satisfy the claim.'" *Id.* (quoting *Rose*, 904 F. Supp 2d at 248. "'Notice of claim requirements are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action for lack of subject-matter jurisdiction." *Id.* (quoting *Tulino v. City of New York*, No. 15-cv-7106, 2016 WL 2967847, at *3 (S.D.N.Y. May 19, 201) (additional citation omitted)).

Plaintiff provides that, on unspecified dates, he filed "motions for leave to file a late notice of claim and leave to file a late claim against the municipal defendants." Compl. at 9. He provides that on October 14, 2015,[12] the Clerk of the Albany County Supreme Court advised him "that his motion and supporting documents were being returned," including "his application for an order to show cause for alternate service and his accompanying application for a waiver/reduced filing fee. The stated reason for the return was the Plaintiff's failure to include a request for an index number." *Id.* Plaintiff contends that the requirement that plaintiff include an index number "was improper particularly given his pro se status and the fact that he was financially unable to pay the associated fee, as evidenced by his application for a waiver/reduced filing fee. The

[12] The undersigned assumes this is a scrivener's error and plaintiff intended to say October 14, 2025. *See* Compl. at 9.

plaintiff believes he should not have been required to request an index number under those circumstances." *Id.*

Plaintiff has, therefore, demonstrated that he did not file a notice of claim upon the County, and insofar as he sought permission to file a late notice of claim sometime in 2025, he does not demonstrate that the permission was granted in state court. Indeed, he appears to indicate that his papers were returned.[13] Accordingly, this Court lacks subject matter jurisdiction over plaintiff's state law claims.

2. **St. Peter's Defendants**

a. **Assault and Battery**

Plaintiff contends that defendants' "forcible physical restraint" and use of a sedative without his consent "constitute an unlawful and unprivileged touching of Plaintiff." Compl. at 8. Assault and battery claims under New York law have a one-year statute of limitations. *See* N.Y. C.P.L.R. § 215(3); *see, e.g.*, *Burns v. City of Utica*, 2 F. Supp. 3d 283, 295 (N.D.N.Y. 2014). Accordingly, plaintiff's assault and battery claim is time barred.[14]

b. **Intentional Infliction of Emotional Distress**

Plaintiff contends that "Defendants' extreme and outrageous conduct, including the retaliatory denial of care, the forced sedation, and the conspiratorial actions, were beyond all possible bounds of decency and caused Plaintiff severe emotional distress." Compl at 8. This is a one-year statute of limitations. The events occurred on July 30,

[13] To the extent plaintiff argues that the state court should have not required him to request an index number or should have allowed him to serve a late notice of claim, that matter is not properly before this Court. *See Acevedo*, 2026 WL 1661344, at *13 (quoting, *inter alia*, *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 710 (S.D.N.Y. 2011) ("However, district courts within this Circuit 'have routinely found that they lack jurisdiction to even consider . . . ' an application to extend the notice of claim deadline.").

[14] Nothing in his complaint suggests that equitable tolling would apply.

2024, and plaintiff commenced his action on October 22, 2025, more than one year later. Accordingly, this claim must be dismissed as time barred. *See* N.Y. C.P.L.R. § 215(3).[15]

c. **Medical Malpractice & Negligence**

i. **Lack of Informed Consent**

Plaintiff contends that the St. Peter's Hospital and staff "were negligent and committed malpractice by failing to follow established medical standards of care, including the failure to obtain informed consent for the administration of a sedative." Compl. at 8. Here, beyond administering a sedative without informed consent, plaintiff fails to set forth any claims underlying his medical malpractice allegations. Liberally read and applying special solicitude, although plaintiff contends that defendants committed medical malpractice, the only wrongful act plaintiff identifies is that unidentified medical providers administered a sedative without informed consent. Such a claim sounds in ordinary negligence, not medical malpractice. *See Berndston v. United States*, No. 3:15-CV-1879 (AWT), 2017 WL 830390, at *3 (D. Conn. Mar. 1, 2017), *abrogated on other grounds by Corley v. United States*, 11 F.4th 79 (2d Cir. 2021).

> To establish a cause of action to recover damages based on lack of informed consent, a plaintiff must prove (1) that the person providing the professional treatment failed to disclose alternatives thereto and failed to inform the patient of reasonably foreseeable risks associated with the treatment, and the alternatives, that a reasonable medical practitioner would have disclosed in the same circumstances, (2) that a reasonably prudent patient in the same position would not have undergone the treatment if he or she had been fully informed, and (3) that the lack of informed consent is a proximate cause of the injury.'

[15] Nothing in his complaint suggests that equitable tolling would apply.

*Gilmore v. Mihail*, 174 A.D.3d 686, 688, 105 N.Y.S.3d 504, 507 (2019) (citation and internal quotation marks omitted).

Here, plaintiff does not allege that he had the capacity to consent at the time the sedative was administered. Indeed, he provides that he was experiencing a drug-induced delirium. If a patient is combative, poses an immediate danger to themselves or others, and/or is under the influence of mind-altering drugs, a medical provider may not be able to obtain informed consent. *See generally* N.Y. Mental Hygiene Law § 22.09.

Plaintiff's medical malpractice claim is also flawed because he does not specify what injury he suffered as a result of being provided a sedative without informed consent nor does he allege that the lack of informed consent was the proximate cause of any injury. *See McQueen v. United States*, No. 9:19-CV-998 (TJM/CFH), 2021 WL 3849457, at *10 (N.D.N.Y. June 29, 2021), r*eport and recommendation adopted*, No. 9:19-CV-998 (TJM/CFH), 2021 WL 3848494 (N.D.N.Y. Aug. 27, 2021) (quoting *Santilli v. CHP Inc.*, 274 A.D.2d 905, 907, 711 N.Y.S.2d 249 (N.Y. App. Div. 2000)); N.Y. Pub. Health Law § 2805-D(3) (stating, to establish a medical malpractice cause of action based on lack of consent "it must also be established that a reasonably prudent person in the patient's position would not have undergone the treatment or diagnosis if he had been fully informed and that the lack of informed consent is a proximate cause of the injury"). Indeed, he provides that after the sedative was administered, he was treated with activated charcoal, which presumably assisted him with the condition for which he came to the emergency room – the effects of crack cocaine consumption. Accordingly, as plaintiff has not sufficiently pled the elements required, it is recommended that

plaintiff's negligence claim based on informed consent be dismissed. Out of special solicitude to the pro se plaintiff, it is recommended that plaintiff be permitted an opportunity to amend.

ii. **Medical Malpractice**

Insofar as plaintiff argues medical malpractice, although plaintiff summarily states that the St. Peter's defendants deviated from acceptable standards of medical practice, apart from citing the lack of informed consent issue, noted above, plaintiff does not identify what measures any defendant took that departed from accepted standards of medical procedure and caused him injury. Accordingly, plaintiff's medical malpractice claim does not provide sufficient notice to the defendants and fails to meet Rule 8's pleading requirements. Moreover, plaintiff does not identify which defendant allegedly committed medical malpractice, referring to defendants generally. Accordingly, it is recommended that plaintiff's medical malpractice claim be dismissed without prejudice and with leave to amend.

d. **Invasion of Privacy: Mental Hygiene Law § 33.13**

Plaintiff contends that defendants "negligently and maliciously disregarded Plaintiff's explicit request for privacy, publicly exposing his sensitive health condition in the waiting area and hallway, in violation of state law." Compl. at 8. Plaintiff references New York Mental Hygiene Law § 33.13. *See* N.Y. C.P.L.R.§ 2302(a). This statute does create liability for the type of allegations plaintiff raises in his complaint. Plaintiff does not contend that doctors discussed plaintiff's mental health condition verbally or through his clinical chart. Rather, he states that he was allowed to be in public view while

undergoing a drug-induced psychosis, suggesting that members of the public would become aware of his substance use disorder.

Further, even if it did extend to his status as a person with substance use disorder, his mere presence in the hospital waiting room or in the emergency room's hallway does not amount to disclosure of a clinical record under the statute. Lastly, he does not contend that St. Peter's Hospital emergency room is a facility operated, licensed, or funded by the Office of Mental Health or the Office for People with Developmental Disabilities.

Accordingly, it is recommended that this claim be dismissed for failure to state a claim. It is recommended that this claim be dismissed with prejudice as it cannot be cured by a better pleading.

### e. **Negligent Hiring, Retention, and Supervision**

Plaintiff contends that the St. Peter's defendants "were negligent in hiring and retaining security staff, including Defendant Jane Doe, who they knew or should have known had a history or propensity of malicious conduct and unprofessionalism." Compl. at 8.

> To state a claim for negligent hiring, retention or supervision . . . , a plaintiff must plead, in addition to the elements required for a claim of negligence: (1) the existence of an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury; and (3) "a nexus or connection between the defendant's negligence in hiring and retaining [or supervising] the offending employee and the plaintiff's injuries." *Sokola v. Weinstein*, No. 950250/2019, 2023 WL 2055855, at *3 (N.Y. Sup. Ct., N.Y. Cnty. Feb. 7, 2023) (citing *Kenneth R.*, 229 A.D.2d at 161, 654 N.Y.S.2d 791) (internal citations omitted).

I*n re Roman Cath. Diocese of Rockville Ctr., New York*, 651 B.R. 146, 161 (Bankr. S.D.N.Y. 2023).

Even assuming for sake of this review that security staff are Albany Medical Center Employees rather than employees of an outside contractor, plaintiff does not meet the requirements of demonstrating negligence such that he can state a claim for negligent hiring. As far as plaintiff refers to the negligent hiring, training, or retention of Jane Doe Security Officer, plaintiff states only that the security officer told him that she remembers him from jail. He does not contend that this security officer was involved in any physical assault or participated in the restraint. Thus, even if he believed the security officer was hostile to him, he does not demonstrate that plaintiff suffered injury as a result of his interaction with this officer.

Insofar as plaintiff states that other Doe security officers held him down and "surrounded him with clenched fists and open hostility," Compl. at 4, although he does not allege that the security officers actually punched him, he arguably suggests that security officers caused him injury by restraining him. However, plaintiff has not provided sufficient facts to demonstrate that their participation in restraining him was an act of negligence rather than necessitated by his behavior. Plaintiff does not contend that he was calm, responsive, and complaint. The complaint provides that he was suffering a drug-induced delirium. If it is the case that plaintiff was aggressive, it would not follow that security officers assisting in retraining plaintiff would amount to negligent supervision or retention. Moreover, plaintiff fails to allege which of the named St. Peter's defendants had hiring, supervision, or training authority over the security officers.

As to negligent hiring, plaintiff does not contend that defendants were aware that the particular security officers involved in restraining him had any history of related

inappropriate conduct prior to their time of hiring. *See Doe v. Alsaud*, 12 F. Supp. 3d 674, 682 (S.D.N.Y. 2014) (holding negligent supervision and retention "claims require specific allegations of the employee's past wrongdoing to provide a basis from which to infer the employer's knowledge."); *see also Lee v. Albarran*, No. 23-CV-11215 (NSR), 2024 WL 4987310, at *7 (S.D.N.Y. Dec. 5, 2024) (stating, where the plaintiff argued that it has to accept all facts in complaint as true and draw reasonable inferences, the plaintiff's statement that the defendants should have known about employee's prior conduct, with "no factual averments to justify such a conclusion[,]" does not suffice to support a negligent hiring or supervision claim.). Accordingly, it is recommended that plaintiff's negligent hiring, supervision, and retention claim be dismissed without prejudice and with leave to amend.

f. **Respondeat Superior**

Plaintiff contends that the St. Peter's defendants are liable for the acts and omissions of their employees under the theory of respondeat superior. However, there is no standalone cause of action for respondeat superior under New York State law. *See, e.g.*, *Andrews v. City of Rochester*, No. 21-CV-6764-FPG, 2022 WL 2356630, at *3 (W.D.N.Y. June 30, 2022) ("Respondeat superior is not a standalone claim.") (citing *Rodriguez v. City of New York*, No. 18 CIV. 4805 (NRB), 2021 WL 5360120, at *3 (S.D.N.Y. Nov. 16, 2021)); *Jain v. City of New York*, No. 20-CV-5442 (JMF), 2021 WL 6064204, at *3 (S.D.N.Y. Dec. 22, 2021) ("'Under New York law,' however, 'respondeat superior does not stand alone as a substantive cause of action.'") (quoting Biswas v. City of New York, 973 F. Supp. 2d 504, 540 (S.D.N.Y. 2013)). "Rather, it is a vehicle through which a plaintiff can hold an employer responsible for the torts committed by its

employees." *Andrews,* 2022 WL 2356630, at *3 (citing R*osenfeld v. Lenich*, 370 F. Supp. 3d 335, 350 (E.D.N.Y. 2019) ("'Under the New York common law doctrine of respondeat superior, an employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment.'").

Accordingly, it is recommended that such claim be dismissed. Out of special solicitude to plaintiff pro se, it is recommended that the claim be dismissed without prejudice and with opportunity to amend should he wish to allege respondeat superior liability as part of a state law claim against the St. Peter's defendants.

E. **Sanctions**

Plaintiff requests sanctions against the St. Peter's defendants for spoliation of evidence insofar as they failed to respond to his request to preserve surveillance footage from July 30, 2024. *See* Compl. at 8-9. It is recommended that plaintiff's request be denied. Plaintiff does not demonstrate that the St. Peter's defendants did not preserve video footage or when such footage was destroyed only that they did not respond to his requests to preserve the footage. Yet, plaintiff did not advise when he informed St. Peter's defendants of his request to preserve video footage or who he contacted. Considering that plaintiff commenced this action in October 2025 and the incidents in question occurred in July 2024, if plaintiff did not request such a hold until around the time he commenced this action, it is entirely possible that such footage would be destroyed in the course of business well before St. Peter's defendants had any knowledge of plaintiff's commencement of this action.

The Court of Appeals for the Second Circuit describes spoliation as "the destruction or significant alteration of evidence, or the failure to preserve

> property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). A federal district court may impose sanctions under Federal Rule of Civil Procedure 37(b) when a party spoliates evidence in violation of a court order. *Id.* (citing Fed. R. Civ. P. 37(b)(2); J*ohn B. Hull, Inc., v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988)). Even without a discovery order, a federal district court may impose sanctions for spoliation under "its inherent power to control litigation." *Id.* (citations omitted).

*Andrews v. City of New York*, No. 23-CV-2411 (LTS), 2023 WL 3724978, at *4 (S.D.N.Y. May 30, 2023). It is recommended that plaintiff's request for sanctions be denied without prejudice to renew at a later date should this litigation be permitted to proceed.

## V. **Conclusion**[16]

Wherefore, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's in forma pauperis application (Dkt. Nos. 4, 6) is **GRANTED**, and it is

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be addressed as follows:

(1) Section 1983(5) conspiracy/joint claims alleging violations of his First, Fourth, and Fourteenth Amendment rights be **DISMISSSED without prejudice and without opportunity to amend;**

(2) Title III Americans with Disabilities Act monetary damages claims be **DISMISSED with prejudice and without leave to amend**;

[16] "Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000)). A court may, however, in its discretion, deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (quoting Bensch v. Est. of Umar, 2 F.4th 70, 81 (2d Cir. 2021)).

(3) EMTALA claim as pled against St. Peter's Hospital be **DISMISSED without prejudice and with opportunity to amend**, and as pled against all other defendants, such claim, be **DISMISSED with prejudice and without leave to amend**;

(4) Claims against the City of Albany Police Department be **DISMISSED with prejudice and without leave to amend** as against the City of Albany Police Department but **with leave to amend** to name the City of Albany;

(5) Claims against Doe (Moe) City of Albany Police Commissioner and City of Albany Police Sergeant in their official capacities be **DISMISSED with prejudice and without leave to amend**;

(6) Claims against Doe (Moe) City of Albany Police Commissioner and City of Albany Police Sergeant in their individual capacities be **DISMISSED without prejudice and with leave to amend**;

(7) State law claims against the municipal defendants for Assault and Battery; Intentional Infliction of Emotional Distress; Respondeat Superior; Negligent Hiring, Retention, and Supervision; and Respondeat Superior be **DISMISSED with prejudice and without leave to amend**;

(8) Intentional Infliction of Emotional Distress claim against the St. Peter's defendants be **DISMISSED with prejudice and without leave to amend**;

(9) Respondeat Superior claim against the St. Peter's defendants, insofar as it I raised as a standalone claim under New York State law, be **DISMISSED with prejudice and without leave to amend**;

(10) Negligent Hiring, Retention, Supervision claim be **DISMISSED without prejudice and with leave to amend** insofar as it is relates to the alleged incident

involving St. Peter's Hospital Doe security officers[17] who participated in restraining him and be **DISMISSED with prejudice and without leave to amend** as to all remaining St. Peter's defendants;

(11) Mental Hygiene Law § 33.13 claim against the St. Peter's defendants be **DISMISSED without prejudice and without leave to amend** due to lack of subject matter jurisdiction;

(12) Medical Malpractice claim against the St. Peter's defendants be **DISMISSED without prejudice and with leave to amend**;

(13) All Claims against John/Jane Does ## 1-15, Sean Keane, Dennise Allen, and Erica Brandt be **DISMISSED without prejudice and with leave to amend**;

(14) Request for sanctions against the St. Peter's defendants for spoliation of evidence be **DENIED with leave to renew**; and it is further

**IT IS SO ORDERED**.[18]

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[19]

---

[17] Plaintiff is advised that he will be required to timely identify the Doe defendants and then seek to amend the complaint once the Doe defendant(s) are identified and serve such defendants.

[18] Plaintiff is advised that, if the District Judge permits him to amend his complaint as herein recommended, any amended complaint supersedes and replaces the original complaint in its entirety, must include all facts and defendants against whom claims were either permitted to proceed or permitted an amendment, must not incorporate by reference any portion of the original complaint, and may not allege any claims or defendants dismissed from the action without opportunity to amend.

[19] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days

Dated: September 11, 2026
Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge

from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal federal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal federal holiday. *See id.* § 6(a)(1)(c).